```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

```
CRAIG ASHLEY,
                                    HONORABLE JOSEPH E. IRENAS
        Plaintiff,
                                    CIVIL ACTION NO. 11-7526
    v.                                       (JEI/JS)

PLEASANTVILLE POLICE OFFICER        OPINION
ANGELO MALDONADO, et al.,

        Defendants.
```

**APPEARANCES:**

BARRY, CORRADO, GRASSI & GIBSON, P.C.
By:  Joseph C. Grassi, Esq.
     Aaron T. Penrod, Esq.
     Christopher Gillin-Schwartz, Esq.
2700 Pacific Avenue
Wildwood, New Jersey 08260
     Counsel for Plaintiff

BARKER, GELFAND & JAMES, P.C.
By:  A. Michael Barker, Esq.
     Jeffrey A. Jaketic, Esq.
Linwood Greene – Suite 12
210 New Road
Linwood, New Jersey 08221
     Counsel for Defendants Angelo Maldonado, James Searle, and
     City of Pleasantville

ATLANTIC COUNTY DEPARTMENT OF LAW
By:  Alan J. Cohen, Esq.
1333 Atlantic Avenue
Atlantic City, New Jersey 08401
     Counsel for Defendants Grant Cunningham, Jr., and Atlantic
     County

**Irenas**, Senior District Judge:

Plaintiff Craig Ashley initiated this action to recover for injuries sustained during the course of his arrest for driving under the influence in Pleasantville, New Jersey. Ashley brings six total claims pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J.S.A. 10:6-2. Pending before the Court are two motions for summary judgment; one filed by Defendants Officer Angelo Maldonado, Detective James Searle, and the City of Pleasantville, and another by Defendants Officer Grant Cunningham, Jr. and Atlantic County.[1] For the reasons set forth below, these motions will be granted.

**I.**

The events giving rise to this suit begin during the afternoon of July 12, 2010. Sometime early that afternoon, Plaintiff Craig Ashley ("Ashley") visited Calidini's, a liquor store located on the Black Horse Pike. (Ashley Dep. at 105:8) Ashley purchased two twenty-four ounce cans of Molson Ice beer and a pint of Hennessey cognac. (Id. at 105:9-14, 37:18-38:3) In Ashley's recollection, after returning home from Calidini's, he ate dinner sometime around 5:00 p.m. and began drinking the alcohol he had purchased earlier. (Id. at 40:23, 41:14-18)

---

[1] The Court exercises subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367.

Over the course of the next two to three hours, Ashley drank both cans of beer and the pint of Hennessy, the latter consumed in shots. (Id. at 42:13-19) As he finished drinking his alcohol, Ashley decided to visit his father in Egg Harbor Township, a thirty to forty-five minute car ride from Ashley's home. (Id. at 41:23-25, 44:8) Ashley set out for his father's house between 7:00 and 8:00 p.m., but after getting in his black Chevrolet Impala and beginning the drive, he decided that "it seemed better to go back home," so he turned his car around and began the trip back to his house. (Id. at 44:12, 47:12-16)

On his trip back, sometime just before 9:45 p.m., Ashley stopped at the traffic light at the intersection of Doughty Road and New Road in Pleasantville, New Jersey. (Id. at 46:25-47:1) Admittedly intoxicated as he waited for the green light, Ashley fell asleep behind the wheel of his car as he waited for the traffic light to change. (Id. at 49:13-14, 49:24-25) Shortly thereafter, at approximately 9:45 p.m., Defendant Officer Angelo Maldonado ("Maldonado") responded to a report of an unconscious male in the driver's seat of a vehicle at the intersection of Doughty and New Roads. (Maldonado Answers to Interrog. at 5)

Upon his arrival, Maldonado discovered Ashley asleep at the wheel of a black Impala, the first vehicle at the intersection with two cars waiting behind it. (Id.) As he approached the Impala on foot, Maldonado observed exhaust coming from the tail

pipe, and the car's windows down, music playing, with Ashley behind the wheel sleeping. (Id., Ashley Dep. at 50:5-10, 54:7) Maldonado continued approaching on foot and noticed that the car remained in drive while Ashley's foot rested on the brake. (Maldonado Answers to Interrog. at 5) Maldonado then called for backup as he began trying to speak with Ashley. (Id.) Though the parties dispute the precise contents of their conversation, there is no dispute that Maldonado attempted to awaken Ashley by speaking to him, which resulted in Ashley releasing the brake pedal and the Impala moving forward. (Ashley Dep. at 54:18-55:2; Maldonado Answers to Interrog. at 5)

In Ashley's recollection, after Maldonado startled him, the car moved forward just three or four feet, and after stopping the vehicle, Ashley could not recall exactly how the car was put into park and pulled over. (Ashley Dep. at 56:2-12) In Maldonado's retelling, Maldonado startled Ashley, resulting in Ashley releasing his foot from the brake pedal and letting the car slide into the intersection before Maldonado shouted for Ashley to stop. (Maldonado Answers to Interrog. at 5-6) After hearing Maldonado shout, Ashley stepped on the brake pedal, quickly stopping the car and permitting Maldonado to reach into the Impala to place the car in park. (Maldonado Answers to Interrog. at 6)

4

Just after this, Defendant Officer Grant Cunningham ("Cunningham") and Defendant Detective James Searle ("Searle") arrived at the scene.  (Maldonado Answers to Interrog. at 6) As Ashley's car came to a stop, Maldonado informed Ashley he was under arrest and had to step out of the car.  (Ashley Dep. at 59:7-8; Maldonado Answers to Interrog. at 6)  When Ashley did not step out of the vehicle, Maldonado grabbed him by the left arm and pulled him from the vehicle while Ashley held onto the steering wheel.  (Maldonado Answers to Interrog. at 6; Ashley Dep. at 60:10-20)  Meanwhile, as Searle remained approximately thirty feet away and observed the scene, Cunningham began advancing towards Maldonado and Ashley to assist with Ashley's arrest.  (Maldonado Answers to Interrog. at 6; Searle Answers to Interrog. at 5)

Once Maldonado removed Ashley from the car and stood along the open doorframe on the driver's side, Ashley turned to face the vehicle while Maldonado attempted to secure handcuffs on his wrists.  (Ashley Dep. at 77:13-16; Maldonado Answers to Interrog. at 6; Cunningham Investigation Rep. at 2)  When Ashley admittedly "resisted" and pulled his arms away from Maldonado's grasp, Cunningham and Maldonado each took an arm and attempted to place Ashley into the handcuffs while telling him to stop resisting and that he was under arrest. (Ashley Dep. at 78:18-25, 83:12-18; Maldonado Answers to Interrog. at 6; Cunningham

5

Investigation Rep. at 2)  During the course of their efforts to secure the handcuffs, both Maldonado and Cunningham heard a "pop" noise, which Ashley felt but did not hear.  (Ashley Dep. at 131:2; Cunningham Investigation Rep. at 2; Maldonado Answers to Interrog. at 6)  After this altercation and struggle, Maldonado and Cunningham secured Ashley's wrists in the handcuffs and escorted him to Maldonado's police car. (Maldonado Answers to Interrog. at 6)

Though Ashley did not tell the officers that he sustained any injury during the struggle or while in the back of Maldonado's police car, Maldonado noticed something protruding from Ashley's bicep as he helped Ashley out of the car at the Pleasantville Police Department.  (Ashley Dep. at 132:23-133:4; Maldonado Answers to Interrog. at 7)  As soon as they walked inside, Maldonado called for an ambulance, which transported Ashley to AtlantiCare Regional Center in Atlantic City for treatment.  (Maldonado Answers to Interrog. at 7)

At the hospital, doctors treated Ashley for a nondisplaced fractured humerus bone in his right arm.  (AtlantiCare Final Rep. at 2)  In addition, during the course of treatment, Ashley gave a blood sample that later revealed a blood alcohol content of 0.355.  (Certified Laboratory Report, Aug. 3, 2010)  After completing his treatment that evening with painkillers and a

splint on Ashley's right arm, AtlantiCare discharged Ashley. (AtlantiCare Final Rep. at 3)

As a result of his arrest, Ashley pled guilty to a charge of driving while intoxicated in Pleasantville Municipal Court on September 27, 2010.  (Trans. of Guilty Plea, Finding and Sentence, Sept. 27, 2010)  On December 27, 2011, Ashley initiated this lawsuit, alleging that he was the victim of excessive force during the course of his arrest.  Following discovery, the Defendants filed these two motions seeking summary judgment on all of Ashley's claims, a matter now properly before this Court.

**II.**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party.  *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of establishing that no genuine issue of material fact remains.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute

of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 249, 252 (1986).

The nonmoving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).  The court's role in deciding the merits of a summary judgment motion is to determine whether there is a genuine issue for trial, not to determine the credibility of the evidence or the truth of the matter.  *Anderson*, 477 U.S. at 249.

### III.

Ashley brings six federal and state-law claims to recover for his injuries, contending that he was the victim of excessive force, a conspiracy to violate his civil rights, a failure to intervene, and companion claims for municipal liability.  The Court addresses each of these claims in turn.

### A.

Counts I and IV allege that Maldonado, Searle, and Cunningham subjected Ashley to the use of excessive force.  Specifically, Count I alleges, pursuant to § 1983, that Maldonado, Searle, and Cunningham's use of excessive force

deprived Ashley of his rights under the Fourth Amendment of the United States Constitution.  Count IV alleges, pursuant to N.J.S.A. 10:6-2, that Maldonado, Searle, and Cunningham's deprived Ashley of his rights under Article I, Section 7 of the New Jersey Constitution to be free from the use of excessive force.  Excessive force claims are subject to the same standards under both the New Jersey and Federal Constitutions.  *Norcross v. Town of Hammonton*, No. 04-cv-2536 (RBK), 2008 WL 9027248, at *4 (D.N.J. Feb. 5, 2008).

   To determine whether the force used by Maldonado, Searle, and Cunningham was excessive, the Court must determine whether their actions were "objectively reasonable in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation."  *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)).  To determine the reasonableness of the officers' actions, courts consider factors including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight."  *Kopec v. Tate*, 361 F.3d 772, 776-77 (3d Cir. 2004) (citing *Graham*, 490 U.S. at 396)).  A court may also consider the possibility that the suspect is violent or dangerous, the duration of the entire altercation, whether the use of force takes place during the course of

arrest, the possibility that the suspect may be armed, as well as the number of persons that the officers must contend with at one time. *Kopec*, 361 F.3d at 777 (citing *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)). Finally, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

Though the reasonableness determination is "frequently" left to a jury, defendants may be entitled to summary judgment "if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Kopec*, 361 F.3d at 777 (quoting *Abraham v. Raso*, 183 F.3d 279, 289 (3d Cir. 1999)).

Turning first to Searle's liability, there is no dispute that he never made physical contact with Ashley. At his deposition, Ashley conceded that he could not testify under oath that Searle ever used any force against him. (Ashley Dep. at 88:16) In addition, Searle asserted that he never used any force during the altercation, and police reports confirm that Searle never come into contact with Ashley while Maldonado and Cunningham arrested him. (Searle Answers to Interrog. at 12; Cunningham Investigation Rep. at 2) As a result, there is no

basis to conclude that Searle used any force at all, and he is therefore entitled to summary judgment on Counts I and IV.

Reviewing the facts and circumstances of Ashley's arrest, the Court concludes that Maldonado and Cunningham's use of force was reasonable under the circumstances. Before getting behind the wheel of his car, Ashley consumed a pint of Hennessey cognac and two twenty-four ounce Molson Ice beers. (Ashley Dep. at 42:13-43:2) A laboratory test revealed that the admittedly intoxicated Ashley was driving with a blood alcohol content of 0.355. (Id. at 49:4; Certified Laboratory Report, Aug. 3, 2010)

Maldonado discovered Ashley in this state at the intersection of Doughty and New Road, behind the wheel of a stopped but running vehicle at a green traffic signal. (Maldonado Answers to Interrog. at 5) As he approached the car, Maldonado observed Ashley asleep in the driver's seat, front windows open, and the radio "set at a high volume." (Id.; Ashley Dep. at 50:7-10) Maldonado then noticed that the car remained in drive with Ashley's foot on the brake pedal. (Maldonado Answers to Interrog. at 5; Ashley Dep. at 54:7)

As Maldonado called for backup, he attempted to awaken Ashley while standing beside Ashley's car. (Maldonado Answers to Interrog. at 5) Upon hearing Maldonado next to him, Ashley's foot came off the break and the car moved forward before Maldonado shouted, resulting in Ashley abruptly stopping the

11

vehicle.[2]  (Ashley Dep. at 54:23-24, 65:25; Maldonado Answers to Interrog. at 5-6)

With Ashley's vehicle now stopped and placed in park, Maldonado opened the driver-side door and informed Ashley he was under arrest and that Ashley would need to step out of his vehicle.  (Maldonado Answers to Interrog. at 6; Ashley Dep. at 58:8, 59:3-11)  Maldonado repeated the instruction to get out of the car, and when Ashley again did not immediately comply, Maldonado pulled Ashley out of the car by his left arm, apparently while Ashley held onto the steering wheel.  (Maldonado Answers to Interrog. at 6; Ashley Dep. at 60:10-20)

With Ashley out of the vehicle, Cunningham came over alongside Maldonado to assist with Ashley's arrest after observing Ashley's uncooperative behavior.  (Ashley Dep. at 74:20-75:3; Maldonado Answers to Interrog. at 6)  As Ashley stood up and turned to face his car, Maldonado attempted to grab one of his arms to place him in handcuffs.  (Ashley Dep. at 77:13-16; Maldonado Answers to Interrog. at 6; Cunningham Investigation Rep. at 2)  Ashley resisted Maldonado's attempts,

---

[2] Maldonado contends the car moved ten feet out into the intersection and nearly collided with another vehicle, while Ashley asserts that his car traveled somewhere between three to four feet before he brought it to a stop. (Compare Maldonado Answers to Interrog. at 6 with Ashley Dep. at 65:25) However, there is no disagreement that Ashley was asleep behind the wheel and accidentally allowed the car to move as he awoke when Maldonado approached him.  Whether the car traveled three feet or ten is immaterial to deciding these motions.

12

and Cunningham and Maldonado each grabbed an arm while they told Ashley to stop resisting their efforts to place him under arrest.  (Maldonado Answers to Interrog. at 6; Cunningham Investigation Rep. at 2)  At his deposition, Ashley conceded that he "tried to pull [his] arms" from the officers' grasp, and a struggle ensued as Ashley continued to resist the officers' efforts for a short time.  (Ashley Dep. at 79:22; Maldonado Answers to Interrog. at 6)  Ashley continued to resist Maldonado and Cunningham's efforts to secure his arms in the handcuffs, and at some point as they struggled, the officers heard a "pop" noise.  (Cunningham Investigation Rep. at 2; Maldonado Answers to Interrog. at 6)  The altercation ended shortly after hearing the noise, and either just before or after locking the handcuffs in place, the officers and Ashley bumped into the open doorframe of the car as they secured Ashley by the wrists.  (Ashley Dep. at 85:1-5; Cunningham Investigation Rep. at 2; Maldonado Answers to Interrog. at 6)  Ultimately, Maldonado and Cunningham placed Ashley securely into handcuffs and took him to Maldonado's car.[3]

---

[3] Ashley contends that the officers "[h]ead down, shoved [him] into the police car." (Ashley Dep. at 85:21-22)  Ashley concedes he sustained no injury from this, but maintains that this placement constitutes excessive force to put him into the back seat of the car.  In contrast, Maldonado indicated that Ashley leaned on Cunningham for support as they walked to Maldonado's patrol car, and they did nothing out of the ordinary in escorting Ashley into the car.  (Maldonado Answers to Interrog. at 7)  Even accepting Ashley's account, the force of placing the heavily intoxicated Ashley into the police car, pushing his head down to avoid the open doorframe, would be reasonable to complete his arrest in light of Ashley's efforts to resist arrest in the middle of the street.

In view of these facts, Maldonado and Cunningham acted reasonably during the course of arresting Ashley. There is no dispute that Ashley was highly intoxicated, sleeping behind the wheel of his car at a green light with his foot on the brake. This posed a danger both to Maldonado as he approached Ashley's vehicle on foot, and to other drivers waiting behind Ashley at the green light. In addition, there is no dispute that Ashley physically resisted Maldonado and Cunningham's efforts to place him under arrest by refusing to get out of the car, and then struggling and pulling away while the officers tried to put him in handcuffs. The force used on Ashley to pull him from the vehicle, restrain him as they placed him in handcuffs, and place him in Maldonado's patrol car was reasonable under the circumstances. As a result, Maldonado and Cunningham are entitled to summary judgment on Ashley's excessive force claims.

**B.**

Count III asserts that Maldonado, Searle, and Cunningham conspired to perform acts that would deprive Ashley of his constitutional rights under § 1983 and N.J.S.A. 10:6-2.[4]

---

[4] The Court considers these claims together, as N.J.S.A. 10:6-2 is generally construed as analogous to § 1983. *Pettit v. New Jersey*, No. 09-cv-3735 (NLH), 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011).

A civil conspiracy under § 1983 is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage."  *Jones v. Dalton*, 867 F.Supp.2d 572, 585 (D.N.J. 2012) (quoting *Adams v. Teamsters*, 214 F. App'x 167, 172 (3d Cir. 2007)).  To constitute a conspiracy, "there must be a 'meeting of the minds.'"  *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).

In the present circumstances, the undisputed record demonstrates no agreement to commit an unlawful act, or to commit a lawful act by unlawful means.  There is no indication that Maldonado, Searle, or Cunningham ever met Ashley before his arrest on July 12, 2010.  (Ashley Dep. at 159:25-160:15)  Similarly, the undisputed record does not contain any indication that Maldonado, Searle, or Cunningham agreed to violate Ashley's civil rights.  As a result, Maldonado, Searle, and Cunningham are entitled to summary judgment on Ashley's conspiracy claim.

### c.

Count II asserts a claim under § 1983 against Searle for failure to intervene.

A police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force. *Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir. 2002). This duty applies to all officers, regardless of rank, if such a constitutional violation takes place in their presence, and liability depends on whether the officer had a "realistic and reasonable opportunity to intervene." *Id.* at 651 (citing *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986)).

The undisputed record demonstrates that no constitutional violation occurred. As described *supra*, neither Maldonado nor Cunningham used excessive force, and the record contains no evidence of a conspiracy to deprive Ashley of his constitutional rights. Without any underlying constitutional violation, Searle cannot be liable for a failure to intervene and the Court will therefore grant summary judgment in his favor on this claim.

### D.

Counts V and VI assert claims of municipal liability against the City of Pleasantville and Atlantic County under § 1983 and N.J.S.A. 10:6-2.[5] However, in the absence of an underlying constitutional violation, there can be no municipal

---

[5] Again, the Court considers these claims under the same standard because N.J.S.A. 10:6-2 is generally construed as analogous to § 1983. *Pettit*, 2011 WL 1325614, at *3.

liability under § 1983.  *See Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 482-83 (3d Cir. 2003) ("[F]or there to be municipal liability, there still must be a violation of the plaintiff's constitutional rights."). The undisputed record does not show that Ashley sustained any constitutional harm, and therefore Pleasantville and Atlantic County are entitled to summary judgment on claims of municipal liability.

**IV.**

Based on the foregoing, the Defendants' motions for summary judgment will be granted.  An appropriate Order accompanies this Opinion.


Date: 3-24-14

                                    s/ Joseph E. Irenas
                              **Joseph E. Irenas, S.U.S.D.J.**

17